IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 5, 2008

**ANTONIO SANDERS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 02-05449     Chris Craft, Judge**

---

**No. W2007-01089-CCA-R3-PC  - Filed May 12, 2008**

---

The Petitioner, Antonio Sanders, appeals from the order of the Shelby County Criminal Court denying post-conviction relief. On appeal, he argues that he did not receive the effective assistance of counsel at trial, and therefore, that the post-conviction court erred by denying relief. Following our review of the record and the parties' briefs, we affirm the post-conviction court's order dismissing the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JERRY L. SMITH, J., joined.

R. Andrew Hutchinson, Memphis, Tennessee, for the appellant, Antonio Sanders.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William L. Gibbons, District Attorney General; and Nicole Germain, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

Following a jury trial, the Petitioner was convicted of first degree felony murder, aggravated robbery, aggravated burglary and five counts of attempted aggravated robbery. See State v. Antonio Sanders, No. W2004-02356-CCA-R3-CD, 2005 WL 2008180 (Tenn. Crim. App., Jackson, Aug. 19, 2005), perm. to app. denied, (Tenn. Dec. 27, 2005). He received an effective sentence of life imprisonment. See id. On direct appeal, this Court summarized the facts established at trial as follows:

In the light most favorable to the state, the record reflects that Carlos Mata testified that on the night of November 9, 2001, he was robbed by a masked man armed with a gun who entered his home on Jasmine Cove; that the masked man shot and killed his brother, Teadoro Mata; that he and his friends attacked and disarmed the man; and that when the mask was removed, they discovered the defendant was the assailant. Carlos Mata's testimony was corroborated by that of Nicholas Mata and Arturo Garcia. Officer Colson found Carlos Mata's wallet in the defendant's pocket and although the defendant tested negative for gunshot residue, someone could be in close proximity to a gun when it is fired and still test negative for gunshot residue.

Id. at *8.

His direct appeal was denied, see id., and he submitted a timely petition for post-conviction relief. Post-conviction counsel was appointed, and an amended petition was filed. The post-conviction court then held a hearing at which the Petitioner and trial counsel both testified.

The Petitioner testified that trial counsel represented him prior to and during his trial. According to the Petitioner, his lawyer met with him "two or three times" before trial. The Petitioner averred that, at one point, the State made a plea offer under which he could have been sentenced to a term of three to six years. The Petitioner contended that had that offer been adequately explained to him by trial counsel, he would have accepted it and not proceeded to trial. He stated that he did not take the three-to-six-year offer because trial counsel never explained it to him, even though he asked trial counsel questions about the offer. Subsequently, the State made another offer which carried a fifteen-year sentence. The Petitioner also declined that offer.

The Petitioner agreed that he had "mental difficulties," and he explained their nature and cause as follows:

When I was a young around [sic] about seven years old I got hit in the head with a horseshoe, and I've been getting a disability check. I've been taking—they put me in a [r]esource—well, I take a Special Ed classes and I was hard on comprehending sometimes, you may have to ask me two or three times just for me to know how to do things, so I might have to ask.

He also confirmed that he had difficulty understanding simple questions and that he had limited short term memory abilities. The Petitioner conveyed to trial counsel that he had mental problems, but trial counsel did not have him "mentally evaluated."

Further, the Petitioner asserted that it was not his decision to go to trial and that trial counsel "made him" testify. However, on cross-examination, the Petitioner agreed that the trial judge had explained his rights to him and that he understood that he had an absolute right not to testify before deciding to take the stand.

-2-

Trial counsel, an assistant public defender, testified that the State never made a three-to-six-year plea offer. Rather, the State's only offer was a fifteen-year sentence in exchange for the Petitioner's guilty plea to second degree murder. When trial counsel conveyed the State's fifteen-year offer, the Petitioner told him that he would only settle the case in exchange for a sentence of three to six years. Trial counsel produced documentation evincing the fact that he conveyed the State's fifteen-year offer to the Petitioner. The document, which was signed by the Petitioner, was entered as an exhibit to the hearing and stated as follows:

> I understand that I am charged with first degree murder. If I am convicted I will receive life with the possibility of parole or life without parole. If I am convicted of first degree murder I will serve at least fifty-two years in jail. My offer is presently fifteen years as murder second degree . . . I do not wish to plead guilty. I want to go to trial. All offers are revoked and I will go to trial June 1st, 2004.

Trial counsel also denied forcing the Petitioner to take the stand, asserting that the Petitioner decided to go to trial and testify on his own volition. Trial counsel further explained that he met with the Petitioner in jail once a month for six or seven months prior to his trial, in addition to meeting with him in court "at least" thirty times at "report settings." Trial counsel stated that he knew the Petitioner was "a little slow," so he made sure that he "understood everything." According to trial counsel, the Petitioner did understand everything conveyed to him before deciding to go to trial.

Asked why a mental evaluation was never sought for the Petitioner, trial counsel explained as follows:

> I believed he was competent. He assisted with me. He wrote me letters asking for certain things [to] be done. He was certainly aware of that. There was no insanity defense available. I didn't think there was an insanity defense available.

Trial counsel also explained the Petitioner was consistently adamant that he did not perpetrate the murder. The Petitioner's version of events was "that it happened another way," and because the Petitioner denied perpetrating the murder, and made statements to that effect that were admitted at his trial, a defense based on his reduced mental capacities was not feasible. Additionally, trial counsel explained the Capital Defense Team originally represented the Petitioner and did "extensive background checks and things of that nature." Trial counsel was assigned the case after the State announced that it was no longer a capital case.

After the hearing, the post-conviction court entered a written order denying relief. In the order, the post-conviction court ruled against the Petitioner on each of the issues raised in his original petition and amended petition. The post-conviction court also made a number of factual findings. Specifically, the court found that "[t]he Petitioner offered no proof that he was not competent or that he would have had a mental defense at trial." The court also made credibility determinations and resolved other factual disputes, finding as follows:

. . . [Trial counsel] spen[t] an adequate amount of time with the Petitioner in informing him of the issues in his case, making sure he understood those issues and his rights, and in preparing for trial. Several disputed issues were testified to by the Petitioner in the hearing which were not raised in the petition, such as the Petitioner's being offered 3 to 6 years on this murder case but his attorney refusing to talk with him about it, and his attorney's forcing him to testify at his trial. All of these allegations were flatly denied by his attorney, by the exhibits, the trial record and by common sense. The Petitioner did not make a credible witness, which his attorney, an experienced member of the Shelby County Public Defender's Office, did. This allegation is without merit.

It is from this determination that the Petitioner now appeals.

## ANALYSIS

On appeal, the Petitioner argues that the post-conviction court erred in denying relief because "the weight of the evidence" presented to the post-conviction court demonstrated that trial counsel's representation fell below the standards set forth in Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). Specifically, he argues that trial counsel's performance was constitutionally inadequate because he failed to communicate plea offers to the Petitioner, or failed to communicate them in a manner the Petitioner could understand. Moreover, he contends that "there more likely than not would have never been a trial" had trial counsel done a better job of communicating the State's plea offer.

The Petitioner further argues that trial counsel was ineffective for failing to order a mental evaluation because trial counsel had reason to know that the Petitioner was "mentally deficient." As evidence of his reduced cognitive capacity, the Petitioner highlights the fact that he received disability payments and had been enrolled in special education classes while attending school. According to the Petitioner, had trial counsel acquired "and/or acted upon this knowledge the results of the trial would have been different."

To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State

v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id. (emphasis in original).

The Petitioner's assertions on appeal regarding whether trial counsel fully and adequately conveyed the State's plea offer were questions of fact resolved by the post-conviction court. The evidence does not preponderate against the post-conviction court's findings that: (1) no three-to-six-year offer was ever made by the State; and (2) trial counsel fully and adequately explained the State's fifteen-year offer to the Petitioner. Further, the record does not preponderate against the post-conviction court's finding that the Petitioner produced no evidence demonstrating incompetency or that any defense rooted in reduced mental capacity was plausible. As such, the Petitioner's arguments that trial counsel's performance was deficient for failing to sufficiently relay the State's

plea offers and for failing to pursue or present a defense based on his reduced mental capacity are not persuasive. See Fields, 40 S.W.3d at 458.

Moreover, the post-conviction court specifically accredited trial counsel's testimony that the Petitioner comprehended the nature of his case and the consequences of proceeding to trial, and this Court will not reevaluate credibility determinations. See Henley, 960 S.W.2d at 578–79. Other than the Petitioner's testimony, which was discredited by the post-conviction court, no evidence regarding his cognitive capacity was adduced. Consequently, we conclude that the Petitioner has failed to demonstrate that trial counsel's performance was deficient or that he was prejudiced by trial counsel's representation. See Momon, 18 S.W.3d at 156.

**Conclusion**

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
DAVID H. WELLES, JUDGE